1 | WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kimberly Anne Robison,<br><br>Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>Defendant. | No. CV-13-00488-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Claimant Kimberly Anne Robison's Application for Attorney Fees under the Equal Access to Justice Act, (Doc. 35).

**I. BACKGROUND**

Robison applied for Social Security benefits. The administrative law judge (ALJ) denied benefits and this Court affirmed. The Ninth Circuit reversed and remanded for further administrative proceedings, ruling that "[t]he ALJ did not provide 'specific, clear and convincing reasons' for rejecting [the Claimant's] testimony about the severity of her symptoms." (Doc. 33-1 at 2.) It also noted that the ALJ erred in giving "[n]o weight" to the treating nurse practitioner's opinion as to the extent of the Claimant's disability. (Doc. 33-1 at 4.)

Robison seeks an award of $20,987.47 in attorneys' fees and $1,453.52 in costs under the Equal Access to Justice Act (EAJA). For the reasons set forth below, her application is denied.

///

///

## II. THE LAW

The EAJA provides that "a court shall award to a prevailing party other than the United States fees and other expenses . . . incurred by that party in any civil action . . . unless the court finds that the position of the United States was substantially justified." 28 U.S.C. § 2412(d)(1)(a). "Substantial justification means 'justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person.'" *Meier v. Colvin,* 727 F.3d 867, 870 (9th Cir. 2013) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "Substantially justified does not mean '"justified to a high degree."'" *Gonzales v. Free Speech Coal.*, 408 F.3d 613, 618 (9th Cir. 2005) (quoting *Pierce*, 487 U.S. at 565). Rather, "substantially justified means there is a dispute over which 'reasonable minds could differ.'" *Id.* (quoting *League of Women Voters of Cal. v. FCC*, 798 F.2d 1255, 1260 (9th Cir. 1986)). If "a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact," then the government's position is substantially justified. *Pierce*, 487 U.S. at 566 n.2. Both the government's reason(s) for the denial and its basis for defending that denial must be substantially justified. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1259 (9th Cir. 2001).

The EAJA's substantial justification standard is not synonymous with the Social Security Act's "substantial evidence" standard. *See Pierce*, 487 U.S. at 568–69. Nevertheless, the substantial evidence standard is a deferential standard that is similarly defined. "'Substantial evidence' means . . . such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Meier*, 727 F.3d at 872 (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). Thus, this Circuit has held that when it holds that an "agency's decision [is] unsupported by substantial evidence . . . [the holding is] a strong indication that the 'position of the United States' [is] not substantially justified." *Id.* (quoting *Thangaraja v. Gonzales*, 428 F.3d 870, 874 (9th Cir. 2005)).

Even so, this Circuit consistently recognizes the distinction between the two standards. *See Campbell v. Astrue*, 736 F.3d 867, 869 (9th Cir. 2013) (observing that

"this circuit has never stated that *every* time this court reverses and remands the ALJ's decision for lack of substantial evidence the claimant should be awarded attorney's fees." (emphasis in original)). Indeed, it is proper in the context of a request for attorneys' fees under the EAJA for the district court to consider the government's initial success in the district court in determining whether the government's position is justified to a degree that could satisfy a reasonable person. *Meier*, 727 F.3d at 873 (citing *Lewis v. Barnhart*, 281 F.3d 1081, 1084 (9th Cir. 2002)). Such success is evidence that a reasonable person could think that the government's position was correct and thus substantially justified. *See, e.g.*, *Putz v. Astrue*, 454 F. App'x 632, 632 (9th Cir. 2011) (unpublished) ("Although a majority of the prior panel reversed the Administrative Law Judge's (ALJ) disability ruling and remanded for payment of benefits, the dispute was one in which reasonable minds did differ: the ALJ, the district judge, and a dissenting circuit judge were all convinced that Putz was not disabled."); *see also Saunders v. Astrue*, No. CV-08-595-PHX-DGC, 2011 WL 2981772, at *1 (D. Ariz. July 22, 2011) (denying EAJA fees based in part on the fact that the district court affirmed the ALJ's decision). The burden to make this showing, however, belongs to the government. *Meier*, 727 F.3d at 870.

In evaluating this request for an award of attorneys' fees under the EAJA, this Court discounts its original views, since reversed, on whether the Government met the substantial evidence standard in denying benefits to the Plaintiff. But, having done so, this Court still finds on re-examination that at least several of the grounds offered by the ALJ for discounting the symptom testimony of the Claimant were substantially justified, even though there was not sufficient evidence to prevail under the substantial evidence standard.[1]

---

[1] To reject a claimant's symptom testimony the ALJ must provide "specific, clear and convincing reasons for doing so." *Garrison v. Colvin*, 759 F.3d 995, 1014–15 (9th Cir. 2014) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996)). This is the most stringent standard required in Social Security cases. *Id.* It is initially the job of this Court, subject to the review of the Ninth Circuit, to determine whether there is substantial evidence on which the ALJ might have found by clear and convincing reasons that the claimant's symptom testimony should be discounted. But determinations as to what constitutes sufficiently substantial evidence to meet a clear and convincing standard can be a matter upon which reasonable minds can differ, even though, of course, the Ninth

This Court further finds that, despite the ALJ's error in discounting the opinion evidence of the nurse practitioner in this case, there was substantial justification in both law and in the record for the ALJ to have done so and a substantial basis on which the Government could argue that the decision met the substantial evidence standard.

Because the Ninth Circuit has directed that the distinction between the substantial justification and the substantial evidence standard is a fine one, and because the Court's application of it results in the denial of attorneys' fees to a party that prevailed in obtaining a reversal and remand, the Court sets forth its reasoning in some detail to facilitate review of its conclusion by the appellate court should such review be sought.

### III. ANALYSIS

The substantial justification inquiry focuses on the government's position with respect to the issue on which the Court based its remand. *Hardisty v. Astrue*, 592 F.3d 1072, 1079 (9th Cir. 2010). In its reversal the Ninth Circuit indicated, first, that the ALJ did not provide specific, clear and convincing reasons for rejecting Robison's testimony about the severity of her symptoms. Second, it held that the ALJ erred in not crediting the opinion of the nurse practitioner.

**A. Discounting the Extent of the Claimant's Symptom Testimony**

In this case, the ALJ offered six justifications for discounting the extent of the Claimant's symptom testimony. They are as follows:

**1. The Claimant's Termination During Her Alleged Period of Disability That Was Unrelated to Her Impairments**

Among other reasons for discounting the extent of the Claimant's symptom testimony the ALJ noted: "[t]here is evidence that the claimant stopped working for reasons not related to the allegedly disabling impairments. Specifically, the claimant was fired from her last job." (R. at 19.) There was in fact evidence that Claimant was fired from a job during the alleged disability period for reasons not related to her allegedly

---

Circuit's determination on the question is final.

disabling impairments.

In his opening statement at Claimant's hearing, Claimant's attorney told the ALJ "[s]he got a job at a carwash in early 2010, and the notes at 15F, pages 19 and 20,[2] note she was fired from that job." (R. at 37.) The notes referenced by the Claimant's attorney to the ALJ are periodic psychiatric progress notes reflecting a consultation between the Claimant and Nurse Practitioner Brandy McLaughlin for March 30, 2010—a short time after the Claimant was fired from the car wash job. Those psychiatric progress notes reflect that the Claimant told NP McLaughlin that she was fired from her job but that she did not know why. (Exhibit No. 15F at 19, R. at 887.) More importantly, those same notes also reflect that the Claimant denied having any manic symptoms or psychosis, but that she reported adequate sleep, energy and appetite. "Denies manic symptoms. Denies psychosis. Reports sleep/energy/appetite fair." (*Id*.)

The psychiatric progress notes from the previous visit a few weeks earlier—on March 1, 2010—also reflect that the Claimant had recently found a job as a cashier at a car wash and, significantly, that she was not having issues with her mental health. (R. at 889.) Claimant reported "she found a job 2 1/2 weeks ago working as a cashier at a car wash." (*Id.*) She further reported that she was not having mood swings, racing thoughts, psychosis, and was doing well: "Reports mood 'good'; affect calm. Denies mood swings or racing thoughts. Denies DTS or DTO. Denies psychosis. Reports sleeping 10 hours per night. Energy fair. Appetite good." (*Id.*) The Claimant attributed the improvement in her symptoms to her adherence to her medication. She came to the visit with her father who reported "vast improvement; reports BHR has demonstrated increased stability, maturity and calmness." *Id.*

At her hearing, the Claimant acknowledged that she made many mistakes during her brief car wash employment but, she thought because she was new "they should give me a second chance, and apparently they didn't feel that I was going to catch on. So—" they fired her but never told her why. At hearing she testified that she thought her poor

---

[2] These pages are found in the record at pages 887–88.

- 5 -

performance and hence her termination might have been attributable to her mania, racing thoughts, anxiety or delusions:

> Q. You mentioned that you have trouble concentrating or focusing when you have—when you're in a period of mania.
>
> A. Yes, sir.
>
> Q. What does that mean—do you just buzz around?
>
> A. I have racing thoughts—
>
> Q. Mm-hmm.
>
> A. —and it's not easy to focus on one thing because I'm not calm or collected whatsoever when I'm experiencing that.
>
> Q. Is that something that happened at the car wash?
>
> A. It may have. You know, they let me go so suddenly, and they really didn't give me a reason out loud, but I have a feeling that did have to do with my mania, and my akathisia, and my anxiety disorder, and maybe even possibly delusions because I was having problems with my training.
>
> Q. Were you making mistakes?
>
> A. I was making lots of mistakes, yes. But I felt that I was fairly new and they should give me a second chance, and apparently they didn't feel that I was going to catch on. So—

(R. at 48–49.)

To the extent that the Claimant, at hearing, attempted to attribute her poor performance at her job to her mania, racing thoughts, anxiety or delusions, that testimony is inconsistent with what she told NP McLaughlin during her consultation sessions during the period that Claimant was actually employed at the car wash. Claimant's testimony as well as her medical records where introduced into evidence. There is thus an evidentiary basis from which the ALJ could have reasonably concluded that the Claimant was fired for poor performance that was not attributable to her mental health.

Accepting that the ALJ erred in discounting the Claimant's symptom evidence on this basis alone, the state of the law and the evidence nevertheless provided the ALJ a reasonable basis on which he could and did draw the factual inference that the Claimant's termination at the car wash was due to grounds other than her alleged disability, and that it provided a legitimate basis on which to discount the extent of her symptom testimony.

The law generally places the responsibility to make such determinations with the ALJ. The generally applicable rule is that "if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citations omitted); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (holding that the ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion."). This provides the Government with a substantial basis on which it could defend the ALJ's decision to discount the extent of the Claimant's symptom testimony, despite his ultimate error in doing so.

**2. The Avoidance of Individual Counseling**

In discounting the Claimant's symptom testimony the ALJ stated that "she has refused treatment." (R. at 19.) In fact, the Claimant made it plain in her hearing testimony that she consciously rejected the recommendations of her treating professionals that she engage in private counseling:

> Q. What do your doctors and counselor and treating professionals doing to help you try to help you get better (sic)?
>
> A. Well, they put me on anxiety medications. They asked me also to start private counseling, but I basically felt like they were just going to talk to me about losing my father because that was very hard for me. And I didn't feel comfortable talking to a strange (sic) about my father's and my relationship, and I knew they were going to press that, so I've kind of avoided going to counseling. However, I've continued to go to my psychiatrist who's prescribing my meds for me.

(R. at 52–53.)

Thus the Claimant acknowledged a conscious choice to avoid a category of treatment recommended by her treating professionals.

The law is plain that an ALJ may properly consider a claimant's failure to follow treatment advice in assessing the claimant's credibility regarding the intensity and persistence of symptoms. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (noting that the "'unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment'" is a relevant factor in assessing credibility of pain testimony); *see also Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (same).

In rejecting the ALJ's determination that the Claimant's failure to follow through with individualized counseling provided a sufficient basis to discount her symptom testimony, the Ninth Circuit panel noted that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989)). However, this Court does not read the panel's quotation of the sentence from *Nguyen* as suggesting that there is an automatic exception in cases of asserted mental disabilities to the general rule that the ALJ may consider the claimant's lack of compliance with prescribed treatment as a basis on which to discount that claimant's symptom testimony.[3]

In this case, there was a factual basis on which the ALJ concluded that the Claimant "avoided" a category of prescribed treatment. A reasonable person could find this "avoidance" of a class of recommended treatment substantial, and existing Ninth Circuit law recognizes the failure to obtain recommended treatment as a legitimate basis on which to discount symptom testimony. The Government was thus substantially

---

[3] In *Nguyen*, the Ninth Circuit held that the ALJ could not discount a psychologist's opinion that the claimant had affective disorder simply because the claimant did not seek the opinion until after the date of the asserted disability. 100 F.3d at 1465.

- 8 -

justified in discounting Plaintiffs symptom testimony on this basis, even if, in sum it did not constitute substantial evidence sufficient to provide a clear and convincing basis for doing so.

### 3. The Failure to Keep Appointments

The ALJ also noted that "[w]hen she was obtaining treatment she failed to appear on number occasions, see 29F/2, 5, 9, 20 and 33 indicating her impairments were not as severe as alleged." (R. at 19.) The citations included by the ALJ do establish that in the year preceding her hearing, the Claimant either missed or cancelled five of her appointments with her counselor. The Ninth Circuit panel noted that the ALJ did not explain how a few missed appointments undermined Robison's credibility when there was ample evidence that she obtained and actively engaged in treatment for years. Again, accepting that this evidence is insufficient alone or in combination to provide substantial evidence of meeting the clear and convincing standard, the Claimant's failure to keep a number of appointments in the year before her hearing provides some justification, which, in combination with the other factors cited above, provides substantial justification for the ALJ's decision and the Government's determination to defend that decision.

### 4. Asserted Symptoms Inconsistent With Medical Records

The ALJ further discounted the Claimant's characterization of her limitations because they were not supported by the medical records. In his decision the ALJ noted that "the claimant's characterization of pain and self-imposed limitations are not supported by the medical records" and that "[t]urning to the medical evidence, the objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations." (R. at 19–20.) The ALJ then reviewed for the next two and a half pages the chronological treatment records of the Claimant, some of which have already been discussed above. (R. at 20–22.) In these records the Claimant or the treating professional made observations upon which, pursuant to Ninth Circuit law, the ALJ may rely to discount the extent of the Claimant's symptom testimony. *See*

*Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."); *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.")

In reversing and remanding, the Ninth Circuit panel did not discuss the ALJ's determination that the Claimant's testimony regarding the extent of her symptoms was not supported by the medical records. Even assuming, as this Court is obliged to do, that the panel considered this reasoning and determined that singly or in combination it failed to amount to substantial evidence to support the ALJ's finding, there nevertheless was a substantial basis founded in the evidentiary record and the law on which the ALJ could have believed the denial of benefits was appropriate and on which the Government could defend that denial.

### 5. Inadequate Effort in Examination

In further discounting the extent of the Claimant's symptom testimony, the ALJ stated "it was noted in 19F that claimant gave an inadequate effort when tested by the consultative examiner." (R. at 19.) In finding that this did not constitute substantial evidence sufficient to meet the clear and convincing standard, the Ninth Circuit noted that the "inadequate effort" was made for a breath test, and did not relate to the severity of her bipolar symptoms. While the fact that Claimant failed to provide adequate effort in a disability examination by a state examiner can have some bearing on her credibility, it bears little probative value as it relates to disability through asserted bipolar disorder.

### 6. Activities of Daily Living

The ALJ also noted that the Claimant's daily activities were inconsistent with her claim "that she has difficulty standing and concentrating. . . . The claimant has described daily activities that are not limited to the extent one would expect, given the complaints

of disabling symptoms and limitations, which weakens the credibility of her allegations." (R. at 19.)

While an ALJ "may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony," *Burch*, 400 F.3d at 680, "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be inconsistent with doing more than merely resting in bed all day." *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014). In this case the Ninth Circuit noted that the Claimant's ability to attend "to her personal needs and engag[e] in daily living activities at home," was not inconsistent with Robison's claim that she had manic depression and was unable to leave home many times per month. The Court agrees that discrediting Claimant's testimony that she had difficulty walking or standing does little to discredit her testimony that she was impaired due to bipolar disorder.

Although reasons five and six offered by the ALJ for discrediting the Claimant's symptom testimony are not particularly probative, reasons one through four listed above, especially when considered in combination, provide substantial justification for the ALJ to discount the Claimant's symptom testimony even though the Ninth Circuit panel determined that he erred in doing so.

**B. Failure to Credit the Medical Opinion of NP McLaughlin**

The ALJ gave no weight to Nurse Practitioner Brandy McLaughlin's opinion that the Claimant's impairment was moderately severe to severe in all areas. In doing so the ALJ pointed out that, under then-applicable regulations, a nurse practitioner is not an acceptable medical source for making a determination of disability.[4] (R. at 22–23.) The ALJ further noted that he also gave NP McLaughlin's opinion no weight because it was inconsistent with the Claimant's good mental status examinations and her consistent GAF

---

[4] As of March 27, 2017, a new version of 20 C.F.R. § 404.1513 is in force. Prior to that point, the regulation specified that nurse practitioners were not acceptable medical sources but rather "other sources." 20 C.F.R. § 404.1513 (2016).

- 11 -

scores of 55, as well as the Claimant's failure to appear for numerous appointments, the fact that the Claimant was no longer treating with NP McLaughlin, and because NP McLaughlin's opinion was contradicted by the opinion of the state's evaluative experts whose findings were more consistent with the Claimant's medical records. (R. at 22–23.)

In determining that the ALJ erred in giving the Nurse Practitioner's opinion no weight, the panel noted that information from other non-medical sources may nevertheless be used in understanding how an impairment affects an individual's ability to work. 20 C.F.R. § 404.1513(e) (2016). The panel opinion further notes that "[t]o the extent the ALJ concluded the opinion conflicted with 'consistently good mental examinations,' the ALJ erred by not taking the nature of Robison's mental illness and her entire mental health history—including multiple hospitalizations—into account."

Accepting that the ALJ's determination in this respect was error, a nurse practitioner is not a medical source pursuant to Social Security regulations. A disability has to be established by a medical source. And, to the extent the ALJ may consider the testimony of NP McLaughlin in understanding "the severity of [the claimant's] impairment(s) and how it affects [the claimant's] ability to work," 20 C.F.R. § 404.1513(d) (2016), the ALJ noted that NP McLaughlin's opinion was contradicted by Marcel Van Eerd, Psy.D. and Carol McLean, Ph.D., the consultative examiners whose opinions were in the record. This is a valid basis for rejecting the opinion of an "other source" non-treating medical specialist, and that basis is supported by the record. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("The ALJ may discount testimony from these 'other sources' if the ALJ '"gives reasons germane to each witness for doing so."'"); *Wood v. Colvin*, No. 2:14-CV-00244-VEB, 2015 WL 9413106, at \*6 (E.D. Wash. Dec. 21, 2015) (finding that the contradictory assessment of a consultative examiner was among several germane reasons sufficient to discount a nurse practitioner's opinion). Further, while the Ninth Circuit held that the ALJ's discussion of the Claimant's medical records was not sufficiently detailed to be a basis on which the ALJ could discount the Nurse Practitioner's observations, the ALJ did discuss those records

- 12 -

for two and a half pages, including the records that related to the hospitalization. *See Taylor v. Astrue*, No. CV-07-0148-PHX-FJM, 2010 WL 537726, at *2 (D. Ariz. Feb. 11, 2010) (holding that "it is clear that reasonable minds can differ as to the significance of . . . treatment records" as a basis for contesting claims). Thus, while the ALJ ultimately may not have provided a sufficient evidentiary basis on which to give the Nurse Practitioner's opinion about the Claimant's disability no weight, there was substantial justification in the law and in the record by which he reasonably believed he may have done so, and the Government was substantially justified in defending that position.

**IT IS THEREFORE ORDERED** that the Application for Attorney Fees under the Equal Access to Justice Act of Claimant Kimberly Anne Robison, (Doc. 35), is **DENIED**.

Dated this 31st day of May, 2017.

Honorable G. Murray Snow
United States District Judge